**WAL–MART STORES, INC., Appellant,**

v.

**Raul TAMEZ, Sr., Individually and as Heir of Raul Tamez, Jr., His Deceased Minor Son, et al., Appellees.**

No. 13–95–568–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 9, 1997.

Opinion Overruling Rehearing Feb. 19, 1998.

Jaime A. Drabek, Drabek & Associates, Harlingen, J. Preston Wrotenbery, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, for Appellant.

Roel A. Saenz, Jr., McAllen, Neil E. Norquest, Chris A. Brisack, Norquest & Brisack, McAllen, Francisco R. Villarreal, Edmundo O. Ramirez, Cynthia G. Gutierrez, Thomas D. Koeneke, Ellis, Koeneke & Ramirez, McAllen, for Appellees.

Before SEERDEN, C.J., and CHAVEZ and RODRIGUEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

A jury found Wal–Mart Stores, Inc. ("Wal–Mart"), appellant, guilty of negligence and gross negligence in connection with the accidental shooting death of Raul Tamez, Jr., and assessed approximately $3.5 million in actual damages and $2 million in punitive damages. On appeal, appellant brings twelve points of error complaining of various rulings by the trial court and the sufficiency of the evidence to support the jury's verdict. Because we find that Wal–Mart did not breach any duty owed to appellees, we reverse.

### FACTUAL BACKGROUND

On October 10, 1993, nineteen-year-old Leonel Salinas, Jr. and his girlfriend Ruby Tamez were shopping at a Wal–Mart store in Harlingen, Texas. Salinas and Tamez entered the sporting goods department where Salinas requested to purchase a package of .22 long rifle bullets. The requested bullets were "interchangeable" in that they could properly be used in either a rifle or a handgun.

Salinas testified that, without any questions regarding his age or the intended use for the ammunition, and without having to present identification, he was handed the merchandise. Salinas was then asked by the clerk to take the bullets to the lawn and garden center to pay for the merchandise. Again, without any questions regarding his age or the intended use, and without having to present identification, Salinas paid for the bullets at the lawn and garden register and left the store.

Six days later, on October 16, 1993, Salinas brought Raul Tamez, Jr., the younger cousin of girlfriend Ruby Tamez, fishing along the banks of a canal. Salinas brought along a "Saturday Night Special" handgun which was given to him by his father and which was loaded with the bullets purchased six days earlier at appellant's store. While Salinas and Raul Tamez, Jr. were attempting to catch bait with a net, they saw a snake. Salinas had Raul Tamez, Jr. bring the handgun from the car. After shooting some five or six rounds at the snake, Salinas raised the gun, not realizing that it was pointed in Raul Tamez, Jr.'s direction, and as he did so, the handgun went off in his hands fatally wounding Raul Tamez, Jr. This lawsuit resulted.

A jury returned a verdict finding that appellant (Wal–Mart) was negligent and grossly negligent, and awarded the plaintiffs approximately $3.5 million in actual damages and $2 million in punitive damages. Wal–Mart appeals.

In its first two points of error, Wal–Mart claims the trial court erred in entering judgment in appellees' favor because Wal–Mart's sale of the ammunition in question was in compliance with federal law, and because the evidence was insufficient to show that Wal–Mart violated any duty owed to Raul Tamez, Jr. We agree.

■ The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of the duty. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

■ The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*, 926 S.W.2d 287,

289 (Tex.1996); *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); *Phillips,* 801 S.W.2d at 525. The duty of reasonable care required under a given set of facts may be based on common law principles, or the appropriate standard of conduct may be determined by statute. *See Poole,* 732 S.W.2d at 312; *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985).

### NEGLIGENCE PER SE

■■■ The unexcused violation of a statute setting an applicable standard of care constitutes negligence per se if the statute is designed to prevent an injury to that class of persons to which the injured party belongs. *Poole,* 732 S.W.2d at 312. The sale of ammunition is regulated by the Federal Gun Control Act. 18 U.S.C. §§ 921 *et. seq.* (West 1976 & Supp.1997). Section 922(b), the relevant provision, provides in pertinent part:

> (b) It shall be unlawful for any licensed ... dealer ... to sell or deliver:
>
>> (1) Any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun, or rifle, or ammunition for a shotgun or a rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.

18 U.S.C. § 922(b)(1) (West 1976 & Supp. 1997). In Texas, a violation of this provision may constitute negligence per se. *Peek v. Oshman's Sporting Goods, Inc.,* 768 S.W.2d 841, 844 (Tex.App.—San Antonio 1989, writ denied); *Ellsworth v. Bishop Jewelry and Loan Co.,* 742 S.W.2d 533, 535 (Tex.App.—Dallas 1987, no writ). Under the federal regulation it is clear that if the seller knows or has reasonable cause to believe that the buyer is under the age of eighteen, the sale of *any* ammunition (shotgun, rifle, or handgun) would violate the statute and thus constitute negligence per se. It is equally clear that if the seller knows or has reasonable cause to believe that the buyer is under the age of twenty-one, the sale of handgun ammunition would constitute negligence per se. However, the statute does not address the duty imposed on a seller when selling ammunition which can be properly used in either a rifle *or* a handgun. That, however, is the question we are faced with in this case.

Wal–Mart argues that it did not owe any duty to Raul Tamez, Jr. because its sale of the ammunition to Salinas was in compliance with the federal statute. Wal–Mart contends that if Congress wanted to make the sale of interchangeable ammunition illegal to persons under the age of twenty-one, it could have expressly done so in the statute. Wal–Mart further argues that because interchangeable ammunition can properly be used in a rifle, such ammunition is properly classified as "ammunition for a shotgun or a rifle," and Wal–Mart is in compliance with the statute so long as it sells the ammunition only to individuals over the age of eighteen. Therefore, when Wal–Mart sold the ammunition in question to Salinas, a person who was nineteen years of age at the time of purchase, Wal–Mart concludes that it was in compliance with the statute and thus, could not be found negligent per se.

Appellees, however, argue that Wal–Mart failed to meet its obligations under the statute. Specifically, appellees claim that because the ammunition sold by Wal–Mart was both capable of handgun use and intended for handgun use, it was "ammunition ... other than for a shotgun or rifle," and, therefore, its sale to the nineteen-year-old Salinas was unlawful under § 922(b)(1). As such, appellees conclude, Wal–Mart's sale of interchangeable ammunition to Salinas constituted negligence per se.

■■■ Few courts have addressed the specific issue before us. In *Phillips v. K–Mart Corp.,* 588 So.2d 142, 144 (La.Ct.App.1991), a Louisiana appellate court held that the sale to a nineteen-year-old of ammunition that can be used in either a rifle or a handgun does not violate 18 U.S.C. § 922(b). The court in *Phillips,* however, was using the statute only as a guide because, as stated in the opinion, the doctrine of negligence per se has been repudiated in Louisiana. *Id.* at 143. Nonetheless, the *Phillips* Court found that K–Mart, under the facts presented, was in compliance with the statute when it sold interchangeable ammunition to a nineteen

year-old who indicated that he intended to use the ammunition in a rifle. Although the court, in reaching its finding, seems to place some importance on the fact that the seller asked the buyer what type of weapon in which he intended to use the ammunition in, we note that the statute does not specifically impose a duty of inquiry on the part of the seller. *Bryant v. Winn–Dixie Stores, Inc.,* 786 S.W.2d 547, 549 (Tex.App.—Fort Worth 1990, writ denied)(nothing in 18 U.S.C. § 922(d), containing identical "know or have reasonable cause to know" language, indicates a duty of inquiry on the part of the seller of ammunition).

In addition, we note that 18 U.S.C. § 922(b)(5) makes it "unlawful for any licensed dealer to sell or deliver any *firearm* or *armor-piercing ammunition* to any person unless the licensee notes in his records ... the name, age, and place of residence of such person...." 18 U.S.C. § 922(b)(5) (West Pamph.1997)(emphasis added). The term "notes" creates a duty on the part of the seller to obtain from the purchaser a completed "Firearms Transaction Record" form with correct and verified identification, from which the seller may ascertain the lawfulness of the sale. 18 U.S.C. § 923(g)(West Pamph.1997); *U.S. v. Garcia,* 818 F.2d 136, 141 (1st Cir.1987); *U.S. v. Newman,* 628 F.2d 362, 367 (5th Cir.1980). Thus, it appears that Congress has expressly recognized and imposed a duty on the seller of any firearm or armor-piercing ammunition to inquire into the lawfulness of the sale. *See United States v. Clegg,* 846 F.2d 1221, 1223–24 (9th Cir.1988)(quoting *United States v. Tallmadge,* 829 F.2d 767 (9th Cir.1987)). We are not referred to, nor do we find a corresponding duty of inquiry under the statute regarding the sale of "regular" ammunition as defined at 18 U.S.C. § 921(17)(A). In fact, the current version of the provision, as amended in 1986, represents a change from both the provision as originally enacted in 1968, which imposed a similar recording duty on the seller of "any weapon or ammunition," as well as the 1982 amendment which imposed the same duty on the seller of "any weapon or ammunition except .22 caliber rimfire ammunition." (Pub.L.97–377). If Congress intended to impose such a duty on

the seller of "regular" ammunition, it would have so stated. *See Russello v. United States,* 464 U.S. 16, 24, 104 S.Ct. 296, 301, 78 L.Ed.2d 17 (1983).

In *Bell v. Smitty's Super Valu, Inc.,* 183 Ariz. 66, 900 P.2d 15, 16–17 (1995), an Arizona appellate court affirmed a summary judgment granted on behalf of the seller of ammunition who sold interchangeable bullets to an individual over the age of eighteen but under the age of twenty-one. In doing so, the court held that "[t]he statutory language [of 18 U.S.C. § 922(b)(1) ] thus indicates that Congress intended to allow persons over the age of eighteen access to ammunition usable in rifles or shotguns, even if the ammunition also is usable in handguns." *Id.* 900 P.2d at 17. Therefore, the court concluded that the seller did not violate 18 U.S.C. § 922(b)(1) in selling interchangeable ammunition to a twenty year-old and, therefore, was not negligent per se.

In *Fly v. Cannon,* 836 S.W.2d 570 (Ct.App. Tenn.1992), a Tennessee appellate court assumed, without deciding, that the sale of .44 magnum ammunition to an individual was a violation of 18 U.S.C. § 922(b)(1). The case was decided, however, on the issue of proximate cause. Specifically, the court held that, under the facts of the case, the sale of the ammunition merely "created a condition by which the unfortunate incident was made possible." *Id.* at 575. Therefore, the court concluded that the action of the purchaser, in firing the gun at a perceived intruder, was the "direct and proximate cause of the incident", thus relieving the seller of liability. *Id.*

■ Our analysis of 18 U.S.C. § 922(b)(1) leads us to the same conclusion reached in *Bell* and *Phillips.* As stated in *Bell;*

[t]he statutory language is most consistent with the conclusion that it does not extend to interchangeable ammunition. The statute does not prohibit the sale of ammunition usable in handguns to those under age twenty-one; rather, it prohibits the sale of ammunition other than that for use in a shotgun or rifle. Interchangeable ammunition, because it is usable in a shotgun or rifle, cannot be ammunition other than that

for use in a shotgun or rifle. If Congress had intended to prohibit the sale of all ammunition usable in handguns, regardless of its suitability for long guns, Congress could have so stated.

*Bell,* 900 P.2d at 17.

We also agree with the *Bell* Court's interpretation of the legislative history surrounding the passage of 18 U.S.C. § 922(b)(1). The use of guns and ammunition for purposes of hunting, target practice, gun collecting, and personal protection is not proscribed under the Gun Control Act of 1968. *Huddleston v. United States,* 415 U.S. 814, 829 n. 9, 94 S.Ct. 1262, 1271 n. 9, 39 L.Ed.2d 782 (1974). Rather, these legitimate uses are balanced against the principal purpose of the legislation: "to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Id.* at 824, 94 S.Ct. at 1268, quoting S.Rep.No. 1501, 90th Cong., 2d Sess., 22 (1968), reprinted in 1968 U.S.C.C.A.N. 4410. In striking a balance, Congress gave "persons over age eighteen and under twenty-one greater access to rifle and shotgun ammunition than to ammunition usable solely in handguns." *Bell,* 900 P.2d at 17, citing H.R.Rep. No. 1577, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.C.C.A.N. 4410, 4413-14, 4419.

We conclude, therefore, that Wal–Mart, absent a duty to inquire into the intended use of the ammunition, did not violate 18 U.S.C. § 922(b)(1) by selling interchangeable ammunition to Salinas, a nineteen-year-old buyer. Accordingly, Wal–Mart was not negligent per se.

### COMMON LAW NEGLIGENCE

■ Our finding that Wal–Mart did not violate 18 U.S.C. § 922(b)(1) does not end our inquiry. Appellees contend that, in addition to its duties under the Federal Gun Control Act, Wal–Mart also had a common-law duty to refrain from selling ammunition intended for handgun use to a buyer who by reason of his youth or inexperience was fore-

seeably likely to use it in a negligent or careless manner. Although we agree that Wal–Mart had a common-law duty to act reasonably in selling ammunition to Salinas, we do not find any evidence in the record that the sale in question constituted a breach of that duty.

■ "Negligence rests primarily upon the existence of reason to anticipate injury and [the] failure to perform the duty arising on account of that anticipation." *Peek,* 768 S.W.2d at 847. Accordingly, when determining whether a duty exists, the foremost and dominant consideration is the foreseeability and likelihood of the risk. *Id.* at 846; *Bird,* 868 S.W.2d at 769; *Poole,* 732 S.W.2d at 311. Facts weighing against imposition of a duty are the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant. *Bird,* 868 S.W.2d at 769; *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983); *Peek,* 768 S.W.2d at 847. Other Texas appellate courts have found that a standard of ordinary care on the part of a firearms seller does exist toward a third party who might be injured by an unreasonable sale of a firearm. *See Peek,* 768 S.W.2d at 847; *Hulsebosch v. Ramsey,* 435 S.W.2d 161, 164 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ). We see no reason why this standard of ordinary care should not extend to the seller of ammunition.

■ Wal–Mart argues, in its second point of error, that there is no evidence that its sale of the ammunition breached any duty owed appellees. Alternatively, Wal–Mart argues that there is factually insufficient evidence to support the implied finding of breach of duty.[1] We agree.

The standards governing sufficiency of the evidence review are well-established. In reviewing no evidence points, we consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426,

---

1. This is an implied finding because the issue of negligence was submitted in broad form. Question No. 3 simply asked, "Did the negligence, if any, of those named below proximately cause the occurrence in question?" The jury answered "YES" for both Leonel Salinas, Jr. and Wal–Mart Stores Inc. "Negligence" and "proximate cause" were properly defined in the charge.

430 (Tex.1997); *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275–76 (Tex.1995); *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). In reviewing an insufficiency of the evidence challenge, we must consider, weigh, and examine all of the evidence that supports and that is contrary to the jury's determination. *Plas–Tex., Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). Having done so, we set aside the verdict only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986)(per curiam).

■ Appellees point to Wal–Mart's own policy of inquiring into the purchaser's intended use when selling interchangeable ammunition as evidence of Wal–Mart's common law duty to inquire into Salinas's intended use for purchasing the ammunition. The relevant inquiry here, however, is not whether Wal–Mart's policy governing the sale of interchangeable ammunition was followed; rather, the question is whether Wal–Mart acted unreasonably in selling ammunition to Salinas. *Peek*, 768 S.W.2d at 847.

We find that, under the facts of the case at hand, there was no reason for Wal–Mart to anticipate the negligent or careless use of a handgun, shotgun, or rifle on the part of Salinas. Salinas, being nineteen years of age, was not a minor at the time of the purchase. There is no evidence in the record that Salinas exhibited any observable signs of immaturity or incompetence, or that Salinas demonstrated any form of aberrant behavior. Furthermore, there is nothing in the evidence that would indicate to Wal–Mart that the ammunition in question, which could be lawfully purchased by Salinas, would be used in an improper or negligent manner by him. Accordingly, we hold that there is no evidence that Wal–Mart, in selling the ammunition to Salinas, breached any duty to any third parties.

In light of the above holdings, we sustain appellant's first two points of error. As these two points are dispositive, we need not consider the other points of error raised by Wal–Mart. Tex.R.App. P. 47.1. Accordingly, the judgment of the trial court is reversed, and judgment is rendered that appellees take nothing as against Wal–Mart.

## OPINION ON MOTIONS FOR REHEARING

Appellees have filed motions for rehearing arguing, among other things, that we misinterpreted a federal statute by failing to hold that it requires an ammunition dealer like Wal–Mart to inquire into the intended use of interchangeable ammunition before selling it to persons less that twenty-one years old. Pending our consideration of their motion for rehearing, appellees have filed additional authority in the way of an agency publication of the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) in relation to 18 U.S.C. § 922(b)(1).

■ The 1995 and 1988 editions of the Federal Firearms Regulations Reference Guide, a publication of the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms is designated ATF P 5300.4. The ATF Reference Guide is a publication of some 114 pages, containing reprints of relevant gun control statutes and regulations, as well as an "Additional Information" section which includes subsections entitled "General Information" and "Questions and Answers" designed to help gun dealers understand their responsibilities under the various statutes and regulations. ATF's comments on section 922(b)(1) are found in the latter two subsections. In pertinent part, the ATF Reference Guide restates the age restrictions of section 922(b)(1) in the "General Information" subsection, adding the following guidance to licensed sellers:

[Note: Ammunition interchangeable between rifles and handguns (such as .22 caliber rimfire) may be sold to an individual 18 years of age, but less than 21, if the licensee is satisfied that the ammunition is being acquired for use in a rifle.]

In addition, the "Question and Answer" section provides:

> May a licensee sell interchangeable ammunition such as .22 cal. rimfire to a person less than 21 years old?
>
> Yes, provided the buyer is 18 years of age or older, and the dealer is satisfied that it is for use in a rifle. If the ammunition is intended for use in a handgun, the 21 year old minimum age requirement is applicable.

If the above-quoted language were a part of the federal statute, or the regulations authorized to be promulgated by the ATF, we would consider same in determining whether appellant was negligent *per se* in failing to inquire as to the intended use of the ammunition in question. However, this language was not adopted under the formalities necessary to establish it as law or regulation, but is merely suggestive of the author's recommendation as to how a merchant should conform to the laws and regulations. Consequently, failure to follow the suggestion is not negligence *per se*. *See, e.g., American Federation of Government Employees, Local 2052 v. Reno,* 992 F.2d 331, 335 (D.C.Cir. 1993) (diagram in EEOC instructional manual which indicated the procedure for review of an arbitrator's decision would not be given weight since it was not the sort of authoritative agency pronouncement to which the courts must defer).

Subsequent to furnishing us with the Reference Guide discussed above, appellee furnished this Court with the decision in *Brown v. Wal-Mart Stores, Inc.,* 976 F.Supp. 729, 732–33 (W.D.Tenn.1997). The federal district court in *Brown* denied a motion for summary judgment filed by defendant Wal-Mart on negligence per se and other grounds alleged against it arising out of a shooting incident similar to the case presently before this Court. While the *Brown* decision supports appellee's position that the failure to inquire of a purchaser of this type of ammunition as to whether it is to be used in a handgun or rifle, where it appears the purchaser may be between the ages of nineteen and twenty-one, is negligence *per se*, we believe the better reasoning is as announced in our original opinion. In addition, we note that the *Brown* decision has not yet been reviewed by a federal court of appeals, as the

denial of a motion for summary judgment is not a final order appealable within the jurisdiction of the federal courts of appeals. 28 U.S.C. § 1291; *Aldy v. Valmet Paper Machinery,* 74 F.3d 72, 75 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996). We decline to follow the *Brown* case.

In addition, since these matters were not before the jury or the trial court, we express no opinion on the effect such matters might have on common law negligence.

Having considered all matters in appellees' motions for rehearing, and finding nothing to change our original opinion, the motions are overruled.